# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 15
In the Matter of Eastbrooke
Condominium, &c.,
  Appellant,
   v.
Elaine Ainsworth, &c. et al.,
  Respondents.
(And Two Other Proceedings.)

Robert L. Jacobson, for appellant.
Thomas A. Fink, for respondents.

FAHEY, J.:

  This appeal presents the question whether Real Property Law § 339-y (4) requires a

condominium board of managers to obtain a separate authorization from each

condominium unit owner granting the board authority to proceed on behalf of that owner

- 1 -

for each tax year in which the board challenges the condominium's real property tax assessment. We conclude that section 339-y (4) allows a standing authorization issued by an owner to confer authority upon a board to act on behalf of that owner for the tax year in which that authorization was issued and in all subsequent tax years, unless such authorization is cancelled or retracted.

Background

At issue here are various tax assessments made with respect to the Eastbrooke Condominiums property in the Town of Brighton, which consists of 402 individually-owned units and a communal recreational area located on a separate parcel. The condominium units were assessed for tax years including 2008, 2009, 2010, and 2011. During each of those tax years, petitioner (the condominium board of managers, acting as the agent for individual owners) filed a grievance complaint with respondents (the Town's Assessor and the Board of Assessment Review) with respect to those assessments.

Respondents denied the respective complaints, leading petitioner to commence these proceedings. Petitioner, purportedly acting as agent for each of the 402 unit owners, filed one petition for each of those tax years, wherein it alleged that respondents had incorrectly assessed the condominium units.[1]

---

[1]    Petitioner also challenged the tax assessments for the 2012 and 2013 tax years, and litigation with respect to those assessments was commenced during the pendency of the petitions that are the subject of this appeal. All six of those petitions eventually were consolidated for trial, and the parties stipulated that the value determined by the trial court for the 2011 tax year would be applied to the 2012 and 2013 tax years.

Petitioner's right of agency is derived from Real Property Law § 339-y (4), which provides, in pertinent part, that the board of managers of a condominium complex "[m]ay act as an agent of each unit owner who has given . . . written authorization to seek administrative and judicial review of an assessment." The same statute further provides that the board may also "retain legal counsel on behalf of all unit owners for which it is acting as agent and . . . [c]harge all such unit owners a pro rata share of expenses, disbursements and legal fees" (Real Property Law § 339-y [4]).

The attorney retained by petitioner to challenge the subject assessments sent annual letters to each owner explaining the tax assessment process and affording the unit owner the opportunity to participate in a challenge to respondents' tax assessments. Each of those letters included an authorization containing this language:

> "This authorization shall apply to all pending and future proceedings for tax assessment review and reduction relating to the [Eastbrooke Condominiums], unless revoked pursuant to the parties' representation agreement."

According to petitioner's attorney, "[s]ome owners signed the authorization form every year," while "[s]ome owners signed the form [only] in some years, and some owners never signed an authorization" at all. Nevertheless, all 402 unit owners were listed on the petitions — irrespective of whether they had subscribed to a written authorization required by Real Property Law § 339-y (4).

Shortly before the filing of the petition with respect to the 2010 tax year, respondents asked that petitioner identify which unit owners would not participate in the subject proceedings. In response, petitioner provided some owner authorizations and, based on

evidence that not every owner had signed a separate authorization for each of the tax years in question, the parties apparently were unable to agree which owners would be entitled to a refund to the extent petitioner prevailed following trial.  That dispute prompted respondents to move in limine for a ruling with respect to the class of owners eligible to recover should petitioner prevail at trial.  That is, respondents sought a determination that only those owners who had subscribed to an agency authorization in each of the subject tax years had a right to receive a refund for each of those years.

Supreme Court granted the motion, ruling that the only unit owners who would receive a refund would be those (1) who subscribed to a separate authorization for each of the separate tax years in question (2) before the note of issue in the proceeding for a given tax year was filed.  Following a nonjury trial, the trial court determined that the condominium units had been over-assessed by a total of $4,485,300 for each tax year between 2008 and 2011.  Following the trial, petitioner appealed, and the Appellate Division affirmed the resultant order and judgment, reasoning "that unit owners are required to give an authorization for each tax year for which the assessment is challenged, and a unit owner's authorization for one year did not give the board of managers authorization to act as his or her agent for a different year" (147 AD3d 1510, 1511 [4th Dept 2017]).  Pursuant to our grant of leave (30 NY3d 904 [2017]), petitioner now appeals to this Court.

## Analysis

Our review begins with Article 9-B of the Real Property Law, which embodies the "Condominium Act."  Section 339-y of that article, which is entitled "Separate Taxation"

and which generally speaks to the collective assessment of condominium units (see Real Property Law § 339-y). This case turns on the application of subdivision (4) of that statute, which – as noted -- permits a board of managers to act as an agent of each unit owner of a condominium with respect to which administrative and judicial review of a tax assessment is sought.[2] That subdivision specifically provides that:

> "The board of managers may act as an agent of each unit owner who has given . . . written authorization to seek administrative and judicial review of an assessment made in accordance with [Real Property Law § 339–y (1)], pursuant to[, among other things, Real Property Tax Law article 7]. Their board of managers may retain legal counsel on behalf of all unit owners for which it is acting as agent and to charge all such unit owners a pro rata share of expenses, disbursements and legal fees for which charges the board of managers shall have a lien pursuant to [Real Property Law 339-z]" (Real Property Law § 339-y [4]).

Through that statute the legislature created what amounts to a condition precedent to a board of managers acting on behalf of an individual unit owner in a challenge to a real property tax assessment levied upon a condominium. Namely, the legislature provided that the unit owner must, in writing, authorize the board of managers to dispute that tax assessment on the owner's behalf. To that end, we agree with the Appellate Division "that unit owners are required to give an authorization for each tax year for which the assessment is challenged" (147 AD3d at 1511). We cannot, however, agree with that Court to the

---

[2]     For the purpose of Real Property Law § 339-y (4), "condominium" refers not to an individual unit, but to a building or development as a whole. A condominium is a hybrid form of real property ownership and, "[p]ursuant to the Condominium Act, each owner holds a real property interest in [the] unit and its appurtenances (RPL 339-g), which consists of an exclusive possessory interest in the unit (RPL 339-h) and an undivided interest in the common elements of the condominium [(RPL 339-i)]" (Marc C. Schneider and Dan M. Blumenthal, Practice Commentaries, McKinney's Cons Laws of NY, Book 49, Real Property Law § 339-d).

extent it ruled that "a unit owner's authorization for one year [cannot] give the board of managers authorization to act as [the owner's] agent for a different year" (id.).

Nothing in Real Property Law § 339-y (4) prohibits a standing authorization or otherwise renders lasting permission defective. At worst (from the perspective of petitioner and those situated similarly thereto), that statute is ambiguous with respect to the question whether an owner may confer upon a board continuing authority to challenge a tax assessment on the owner's behalf. As a general rule, tax statutes "relating to review of assessments [are] remedial in character and should be liberally construed to the end that the taxpayer's right to have his [or her] assessment reviewed should not be defeated by a technicality" (Matter of Great E. Mall v Condon, 36 NY2d 544, 548 [1975]; see Expedia, Inc. v City of New York Dept. of Fin., 22 NY3d 121, 127 [2013]). In the same vein, "[a]ny ambiguity in a tax law should be resolved in favor of the taxpayer and against the taxing authority" (id.; see Debevoise & Plimpton v New York State Dept. of Taxation & Fin., 80 NY2d 657, 661 [1993]). To disregard those rules here would be to impermissibly read into Real Property Law § 339-y (4) a requirement (specifically, an obligation of an owner to furnish a board with a separate authorization for each separate year in which the owner wishes to allow the board to challenge the condominium's tax assessment) that the legislature did not codify (cf. Gammons v City of New York, 24 NY3d 562, 570 [2014]).

<u>Additional Considerations</u>

Our analysis closes with three additional points.

*First*, our interpretation of Real Property Law § 339-y (4) is not moved by the legislature's reference to "an assessment" in that section. Irrespective of whether that

language refers to one assessment that remains effective until it is changed by a town assessor, or to an assessment that is effective for one tax year and then is replaced by a subsequent assessment (that may even be of the same value) in a subsequent tax year, the point remains that nothing in that statute explicitly requires a "fresh" authorization for each tax year. There is no dispute that a new grievance and petition are required each year, and that petitioner properly submitted those documents. However, with respect to authorizations, the legislature provided that a "board of managers may act as an agent of each unit owner who has given . . . written authorization to seek . . . review of an assessment" without expressly stating either that the authorization must be specific to a particular tax year or that the authorization cannot be a "standing" one. Moreover, because the authorizations in question here "apply to all pending and future proceedings for tax assessment and review," and are not tied to a particular assessment or to a specific tax year, the "an assessment" clause of Real Property Law § 339-y (4) is of no moment to our analysis.

*Second*, there is no merit to petitioner's contention that "[a]ll unit owners should receive refunds for all years, regardless of whether they provided a formal authorization" on the ground that "[h]omeowners can agree now to accept their refund and pay their share of expense." That argument ignores the point that the legislature has permitted a board to act as agent for individual unit owners only where the requisite, written authorization is subscribed to pursuant to Real Property Law § 339-y (4). Absent that authorization, no agency relationship exists. Absent an agency relationship, these proceedings could not

have been brought on behalf of those unit owners who did not authorize the board to act accordingly.

*Third*, and finally, petitioner's argument that "respondents waived any right to object to authorizations by not raising the issue until [the eve of] trial" also fails. According to petitioner, because respondents first raised this agency issue in a letter that was sent in 2010 — that is, after the filing of the petitions for the tax years 2008 and 2009 — "[t]here was no way for unit owners to know that [respondents] questioned participation in 2008 and 2009," and therefore "no opportunity to cure any defects in 2008 and 2009."

That position reflects a subtle attempt to shift the burden of establishing agency from petitioner to respondents. That is, petitioner essentially contends that respondents were responsible for "disproving" agency. However, it remains petitioner's obligation to prove agency in the first instance (see Real Property Law § 339-y [4]).

Moreover, respondents' challenge to the extent of the class of persons represented by petitioner was timely. An authorization of a unit owner for a board of managers to act on the owner's behalf is necessary to establish the right to recovery under these facts. It is petitioner's obligation to establish agency. Nothing with respect to the timing or the nature of respondents' request for clarification suggests that respondents waived their right to challenge the standing of the board to act on behalf of some unit owners (see generally Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 968 [1998]).

## Conclusion

Considerations of fiscal responsibility and sound municipal budgeting practices require that a municipality receive notice of a complaint with respect to a real property tax

assessment for each year in which such an assessment is challenged. There is not, however, any statutory requirement that a condominium unit owner submit to a condominium board of managers a yearly agency authorization permitting the board to act on the owner's behalf for the purpose of challenging a real property tax assessment (see Real Property Law § 339-y [4]). Where, as here, an owner subscribes to a "standing" agency authorization conferring authority on a board of managers to act on behalf of that owner, section 339-y (4) allows that authorization to remain effective until it is cancelled or retracted. In view of that holding, on remittal the trial court should determine which additional unit owners, if any, are entitled to recover based on a standing grant to the board of managers of authority to pursue the subject real property tax challenges.

Accordingly, the Appellate Division order should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

Matter of Eastbrooke Condominium v Ainsworth

No. 15

DiFIORE, Chief Judge (dissenting):

Misinterpreting Real Property Law § 339-y (4), the majority holds that condominium unit owners need not sign a separate authorization each year permitting a board of managers to file a grievance or initiate a judicial proceeding on their behalf to

- 1 -

challenge a tax assessment, thus exempting them from a long-standing, well-established policy applying to other real property owners. Because the majority creates uncertainty in an area of law requiring clarity, and improperly empowers boards of managers to make decisions the legislature placed in the hands of property owners, I respectfully dissent.

When interpreting a statute, "our primary consideration is to discern and give effect to the Legislature's intention" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]), with the text providing the "clearest indicator" of such intent (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). "When the statutory language at issue is but one component in a larger statutory scheme, it must be analyzed in context and in a manner that harmonizes the related provisions and renders them compatible" (Matter of Mestecky v City of New York, 30 NY3d 239, 243 [2017] [internal quotation marks and citations omitted]).

Real Property Law § 339-y (4) permits a unit owner to authorize a condominium board of managers to challenge "an assessment" on his or her behalf. The phrase "an assessment" appears throughout the relevant provisions of the Real Property Tax Law and the term must be interpreted in the context of the broader statutory scheme. RPTL 524 (2) provides that "[t]he grounds for review of an assessment shall be that the assessment complained of is excessive, unequal or unlawful, or that real property is misclassified" (Real Property Law § 339-y [4] [emphasis added]). With certain exceptions, an administrative "complaint with respect to an assessment shall be on a form prescribed by the commissioner" and shall consist of statements specifying the nature of the claimed error

(RPTL 524 [3] [emphasis added]).  Mirroring that language, Real Property Law § 339-y

(4) provides:

> "The board of managers may act as an agent of each unit owner
> who has given . . . written authorization to seek administrative
> and judicial review of <u>an assessment</u> . . . , pursuant to [RPTL
> article 5, title 1-A, and RPTL article 7, title 1]. The board of
> managers may retain legal counsel on behalf of all unit owners
> for which it is acting as agent and to charge all such unit owners
> a pro rata share of expenses, disbursements and legal fees for
> which charges the board of managers shall have a lien pursuant
> to section [339-z]" (Real Property Law § 339-y [4] [emphasis
> added]).

If a complainant is dissatisfied at the conclusion of the administrative grievance process,

judicial redress can be sought pursuant to RPTL article 7, which authorizes a "proceeding

to review <u>an assessment</u> . . . , [provided that an administrative] complaint was made in due

time to the proper officers to correct such assessment" (RPTL 706 [2] [emphasis added]).

That language matches the practical structure in which it operates.  Generally, a property

owner bringing a standard overvaluation claim must challenge each tax assessment

separately by filing a new grievance complaint and, if necessary, a new judicial proceeding

for each year for which redress is sought because each assessment is typically treated as

"separate and distinct" from any other (see <u>People ex rel. Hilton v Fahrenkopf</u>, 279 NY 49,

52-53 [1938]).[1]

---

[1] As this case demonstrates, because tax certiorari proceedings involving a particular
assessment may not be resolved before the next year's assessment roll is prepared
(particularly when they involve large, multi-unit properties such as the 402-unit
condominium complex at issue here), owners file separate administrative grievances and
article 7 proceedings each succeeding year while the litigation is pending to preserve the

Viewing Real Property Law § 339-y (4) in the context of the broader statutory scheme, it is evident that the phrase "an assessment" in that provision has the same meaning that the phrase has elsewhere in RPTL articles 5 and 7: it refers to the individual tax assessment challenged in a particular administrative grievance or article 7 overvaluation proceeding, neither of which may span more than one tax year.  Consistent with its use of the singular "an," the statute cross-references the RPTL article 5 and article 7 provisions quoted above which, as noted, require separate challenges to "an assessment" for each tax year for which recovery is sought.  Thus, the legislature contemplated that the authorization given under section 339-y (4) would correlate to a particular assessment challenge and did not grant boards of managers the power to secure open-ended, continuing authorizations spanning multiple tax years.  To that end, the statutory scheme requires condominium unit owners to make a separate election to challenge an assessment each tax year by signing an authorization if they wish to have the board of managers assert claims on their behalf for that year.  Although the majority concludes otherwise, the legislature clearly intended to treat condominium unit owners just like other real property owners who must decide each year whether or not to file (or authorize an agent to file [see RPTL 524 (3)]) an article 5 grievance or article 7 proceeding challenging the assessment for that tax year.

This interpretation of the statute comports with the legislative history of Real Property Law § 339-y (4) – which was intended to facilitate claims by unit owners, not

---

right to a refund of taxes for those tax years.  Annual proceedings of this type are typically consolidated for trial, as occurred here.

delegate their authority to boards of managers. As the Attorney General made clear in recommending the legislation, the goal was two-fold: (1) to "permit a reduction in the multiplicity of applications and special proceedings" by allowing unit owners to band together to challenge a tax assessment in a common application filed by the condominium board of managers and (2) to permit "the sharing of costs" relative to such proceedings (Letter from Attorney General, May 28, 1976 at 2, Bill Jacket, L 1976, ch 241).

The first goal is achieved by authorizing the board of managers to file a single complaint, but only "on behalf of unit owners who so request" (see Letter from State Bd. of Equalization and Assessment, May 25, 1976 at 1, Bill Jacket, L 1976, ch 241). Because unit owners are under no obligation to participate in such proceedings, it is critical that – like other real property owners – they decide each year whether or not to challenge their tax assessment, indicating their affirmative decision to do so by signing a section 339-y (4) authorization. The majority's interpretation of the statute shifts that decision to boards of managers, who now may obtain standing authorizations permitting them to sue (or to decline to sue) in any given year at their own election. Permitting a single authorization to carry over to future challenges creates uncertainty given the turnover in ownership and occupancy of these units over time and, absent turnover, unit owners may not recall from one year to the next whether they signed an authorization – a document the board of managers may now rely on in perpetuity absent express revocation.

The second goal – reasonable cost-sharing – is also advanced by my interpretation of the statute. At the conclusion of the litigation, which may take years, the statute

authorizes the board of managers to charge participating unit owners "a pro rata share of expenses, disbursements and legal fees" and also gives the board of managers a statutory lien on those costs (Real Property Law § 339-y [4]).  Because they can be billed for costs incurred prosecuting the tax challenge – regardless of whether the litigation yielded a dime of tax relief – it is critical that unit owners make an informed decision each year whether to challenge a particular assessment.  Under the new rule adopted by the majority, a unit owner who signed a blanket authorization years earlier may be surprised by a bill for the costs of litigation spanning multiple tax years – litigation of which the unit owner may have been entirely unaware.

Properly interpreted, Real Property Law § 339-y protects municipalities by creating an objectively and readily ascertainable pool of unit owners (those who signed authorizations that tax year) who must be paid refunds if a particular assessment is successfully challenged.  It also protects condominium unit owners by requiring a board of managers to secure a written authorization each time it files a grievance on the unit owner's behalf, assuring that the unit owner is aware of, and has specifically approved, each tax certiorari challenge, knowingly assuming liability for any associated costs.

Today, the majority upsets that balance, increasing the power of boards of managers at the expense of condominium unit owners while at the same time stripping unit owners of responsibilities borne by other owners of real property in New York.  The task now falls to the legislature to clarify the requirements of Real Property Law § 339-y so that the

statute can achieve its intended purpose to ensure that localities paying tax refunds and

condominium unit owners seeking them are equally protected and fairly treated.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed, with costs, and matter remitted to Supreme Court, Monroe County, for further proceedings in accordance with the opinion herein.  Opinion by Judge Fahey. Judges Rivera, Stein, Garcia and Wilson concur.  Chief Judge DiFiore dissents and votes to affirm in an opinion in which Judge Feinman concurs.


Decided March 28, 2019